WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roxann Underwood, a married woman,<br><br>Plaintiff,<br><br>v.<br><br>Chapman Bell Road Imports, LLC, an Arizona limited liability company,<br><br>Defendant. | No. CV-12-1835-PHX-DGC<br><br>**ORDER** |

On August 29, 2012, Plaintiff Roxann Underwood filed a complaint against Defendant Chapman Bell Road Imports, LLC, alleging violations of Title VII of the Civil Rights Act. Doc. 1. On February 5, 2013, Defendant filed a motion to compel arbitration (Doc. 12), as allowed by the Federal Arbitration Act. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed."). The motion has been fully briefed and no party has requested oral argument. For the following reasons, the motion will be granted.

**I.   Federal Arbitration Act.**

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. This includes contracts for employment. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–15 (2001). The FAA states that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9

U.S.C. § 2. Absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).

On February 15, 2011, Plaintiff, while working for Defendant, signed a form entitled "Member Acknowledgment and Agreement" ("Agreement"). Doc. 12-1 at 2. The Agreement provided that any legal claim relating to Plaintiff's work for Defendant would be "submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act." *Id.* The Agreement to arbitrate explicitly included any claim arising under Title VII of the Civil Rights Act. *Id.* Plaintiff argues that the Agreement is unenforceable because it is both procedurally and substantively unconscionable. Doc. 13.

**II.    Enforceability of the Agreement.**

    **A.    Procedural Unconscionability.**

Plaintiff argues that the Agreement is procedurally unconscionable under Arizona law. Doc. 13 at 3. Procedural unconscionability is "concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts . . . that mean bargaining did not proceed as it should." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57–58 (Ariz. 1995). The Court considers various factors affecting "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, [and] whether the terms were explained to the weaker party." *Id.* at 57 (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)). Plaintiff highlights various facts showing procedural unconscionability: she has a limited education and lacks business experience; Defendant gave her the Agreement to sign in the middle of a busy work day; Defendant

did not explain the Agreement; and Plaintiff did not understand the concept of arbitration at the time. Doc. 13 at 4. Strongly militating against Plaintiff's arguments is the fact that she signed similar agreements with Defendant on two previous occasions. Doc. 14-1 at 5, 8. In all of these agreements, the sentence by which Plaintiff gave up her right to a jury trial and agreed to arbitration was in bold. *Id.* at 2, 5, 8. Moreover, the terms of the Agreement are not unusual for employment contracts, and this Court has not found procedural unconscionability in similar situations. *See, e.g.*, *Smith v. Autonation, Inc.*, No. CV-10-987-PHX-DGC, 2011 WL 380517, at *2 (D. Ariz. Feb. 2, 2011). Therefore, the Court finds that there was no procedural unconscionability.

### B.     Reasonable Expectations.

Although not explicitly raised by Plaintiff, the reasonable expectations doctrine is more appropriate for determining the enforceability of standardized agreements. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396–97 (Ariz. 1984). This doctrine is similar to, although distinct from, procedural unconscionability. *See Maxwell*, 907 P.2d at 57. Under this doctrine, the Agreement is "presumptively valid and enforceable, whether or not [Plaintiff] read it or appreciated its full effect, *unless* the reasonable-expectations limitation . . . applies." *Harrington v. Pulte Home Corp.,* 119 P.3d 1044, 1050 (Ariz. Ct. App. 2005); *see Darner*, 682 P.2d at 396. Terms of an agreement "are beyond the range of reasonable expectation if one party to the contract 'has reason to believe that the other party would not have accepted the agreement if [she] had known that the agreement contained the particular term.'" *Harrington,* 119 P.3d at 1050 (quoting *Darner,* 682 P.2d at 396–97). Here, the Agreement does not contain bizarre or oppressive terms that show Plaintiff would not have signed had she understood the Agreement. Doc. 12-1. Moreover, the fact that Plaintiff signed similar agreements with Defendant on two other occasions and those contracts, like the Agreement, emphasized that she was waiving her right to a jury trial (Doc. 14-1 at 5, 8), strongly suggest that the Agreement did not defy her reasonable expectations.

### C. Substantive Unconscionability.

Plaintiff argues that the Agreement is substantively unconscionable because it "is unconscionable for a large car dealership with substantial financial resources to have Plaintiff sign an arbitration agreement without any agreement as to how these costs are to be paid." Doc. 13 at 4. Plaintiff emphasizes that she is unemployed and might be unable to pay for arbitration. *Id.* "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 92 (2000). Plaintiff has not shown a likelihood of incurring such costs, and the mere risk of such costs is insufficient to invalidate the Agreement. *Id.* at 91; *see also Harrington*, 119 P.3d at 1055–56. Therefore, the Court finds that the Agreement is not substantively unconscionable.

### D. Superseded Terms.

Plaintiff also argues that the Agreement erroneously stated that the procedures of the Arizona Arbitration Act ("AAA") would govern the arbitration. Doc. 13 at 2. In fact, as Plaintiff indicates, Arizona's Revised Uniform Arbitration Act ("RUAA") had superseded the AAA by the time Plaintiff signed the Agreement. *See* Ariz. Rev. Stat. § 12-3003(A)(3) (stating that on or after January 1, 2011, the RUAA "governs an agreement to arbitrate whenever made"). Plaintiff does not explain how this fact makes the Agreement unenforceable, beyond saying that these "are important issues which may substantially impact Plaintiff's claim." Doc. 13 at 3. Of the various procedural differences between the RUAA and the AAA that Plaintiff cites, however, none is so significant or unfavorable as to unfairly surprise or prejudice Plaintiff.[1] Therefore, the Court finds that this provision does not render the Agreement unenforceable.

---

[1] For example, the RUAA prescribes the procedure for initiating an arbitration, while the AAA does not; the RUAA requires an arbitrator to disclose any facts that might affect impartiality, while the AAA does not; the RUAA allows arbitrators to award punitive damages, while the AAA does not; and the RUAA allows an arbitrator to be appointed by a court of competent jurisdiction in this state, while the AAA requires that the appointment be made by an Arizona Superior Court. Doc. 13 at 2–3.

**III. Conclusion**

Given the "liberal federal policy favoring arbitration," *Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 725 (9th Cir. 2007), the Court will compel arbitration and dismiss the complaint. *See Kam–Ko Bio-Pharm Trading Co., Ltd.-Austl. v. Mayne Pharma (USA), Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) (finding that the court has discretion to dismiss or stay the action to allow arbitration to proceed); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming dismissal to allow arbitration); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir. 1988) (same).

**IT IS ORDERED:**

1. Defendant's motion to compel arbitration (Doc. 12) is **granted.**
2. Plaintiff's complaint (Doc. 1) is **dismissed.**
3. The Clerk is directed to terminate this action.

Dated this 15th day of March, 2013.

*David G. Campbell*
David G. Campbell
United States District Judge